IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINH-SANH TRADING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SFTC, INC., DBA SUN FAT TRADING CORPORATION,<br><br>Defendant. | Case No. 19-cv-04315-CRB<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Vinh-Sanh imports and distributes rice and rice-based products. Decl. of Kon Chen filed Aug. 2, 2019 (dkt. 12) (Aug. 2 Chen Decl.) ¶ 2. Vinh-Sanh has sued SFTC, Inc. (Sun Fat), an importer, distributor, and wholesale buyer of Asian foods, for trademark infringement and unfair competition. See Compl. (dkt. 1). Vinh-Sanh moved for summary judgment, Motion for Summary Judgment (MSJ) (dkt. 93), and Sun Fat failed to oppose. The Court then filed an Order to Show Cause, OSC (dkt. 96), and Sun Fat failed to respond. The Court now GRANTS summary judgment for Vinh-Sanh. However, the Court DENIES without prejudice Vinh-Sanh's request for a permanent injunction.

**I.   BACKGROUND**

   **A.   Facts**

Vinh-Sanh imports and distributes rice and rice-based products. Aug. 2 Chen Decl. ¶ 2. Its most popular product is Thai jasmine rice, which it sells throughout the United States. Id. ¶ 6. In the mid-1980s, Vinh-Sanh established the THREE LADIES brand, and developed a trademark consisting of a drawing of three women wearing clothing representing the countries of Cambodia, Vietnam, and Laos. Id. ¶ 7. Vinh-Sanh has four trademarks in connection with the THREE

1   LADIES brand.  See id. ¶¶ 13–14, Exs. C–F.

2         Sun Fat is an importer, distributor, and wholesale buyer of Asian foods.  Compl. ¶ 22;
3   Compl. Ex. D.  Vinh-Sanh works with a variety of distributors and briefly had a wholesale
4   relationship with Sun Fat "for the sale of a small quantity of THREE LADIES rice."  Aug. 2 Chen
5   Decl. ¶ 18.  Vinh-Sanh "terminated the relationship with Sun Fat" when it discovered that, in its
6   view, Sun Fat was infringing the THREE LADIES mark.  Id. ¶ 19.  Sun Fat had started marketing
7   and selling Thai jasmine rice with the images—photographs, not drawings—of three women
8   wearing what Vinh-Sanh asserts is clothing representing the countries of Cambodia, Vietnam, and
9   Laos.  Id.  Vinh-Sanh has found Sun Fat rice with the similar THREE LADIES mark at multiple
10  stores and markets in multiple cities throughout California.  Id. ¶ 20.

11        Sun Fat admitted in a deposition that it had knowledge of Vinh-Sanh's THREE LADIES
12  marks and rice when Benny Hong, Sun Fat's CEO, created the infringing mark in 2018.  Decl. of
13  Kevin Viau filed Oct. 23, 2019 (Oct. 23 Viau Decl.) Ex. C 19:3–18, 20:16–23, 30:25–31:7.  Sun
14  Fat has been using the title "THREE ASIAN LADIES" in product listing headings for its rice.
15  Aug. 2 Chen Decl. Ex. H.

16        Vinh-Sanh's retailers have reported that some consumers and retailers have been or
17  potentially will be confused by Sun Fat's rice labelling.  Tony Ly Decl. ¶ 6; Aug. 2 Chen Decl. ¶
18  24.  After receiving Sun Fat's rice with the similar labelling, one retailer asked salesperson Cam
19  Mach of First World Trading Corp. (First World), a company related to Vinh-Sanh that markets
20  and sells food products to grocery stores, if there was a new version of THREE LADIES rice
21  packaging.  Mach Decl. (dkt. 42) ¶¶ 4–5; Lau Decl. (dkt. 45-2) ¶¶ 7–9.  This retailer reported:
22  "Many customers come to our store and ask simply for the bag with the three ladies."  Lau Decl. ¶
23  6.  Adding to this confusion is that stores sell Sun Fat's rice at a significantly lower price of up to
24  $10 per bag less than Vinh-Sanh's.  Aug. 2 Chen Decl. ¶ 26.

25      **B.**    **Procedural History**

26        Vinh-Sanh brought suit for federal trademark infringement under 15 U.S.C. § 1114, federal
27  unfair competition under 15 U.S.C. § 1125(a), common law trademark infringement, and unfair
28  competition under the California Business & Professions Code § 17200.  See Compl.  Vinh-Sanh

United States District Court
Northern District of California

applied for a temporary restraining order on August 2, 2019. See TRO App. (dkt. 11). The Court denied the TRO, concluding that while Vinh-Sanh was likely to succeed on the merits and an injunction was in the public interest, Vinh-Sanh had not shown irreparable harm. See Tr. of Aug. 9, 2019 Proceedings (dkt. 27) at 3:19–22. The Court gave the parties leave to conduct further discovery on irreparable harm prior to briefing a preliminary injunction motion. Id. at 3:13–4:12. Vinh-Sanh subsequently filed a motion for preliminary injunction. See Motion for Preliminary Injunction (MPI) (dkt. 39). Sun Fat opposed the motion. See MPI Opp'n (dkt. 44). Vinh-Sanh replied. See MPI Reply (dkt. 45). The Court denied the preliminary injunction, again concluding that while Vinh-Sanh was likely to succeed on the merits and an injunction was in the public interest, Vinh-Sanh had not shown irreparable harm. See Order Denying Preliminary Injunction (dkt. 52). Vinh-Sanh subsequently moved for summary judgment on all of its claims. See MSJ. Sun Fat did not file an opposition. The Court issued an Order to Show Cause ordering Sun Fat to explain why the motion for summary judgment should not be granted, and Sun Fat still did not respond. Vinh-Sanh filed a Reply requesting a permanent injunction against Sun Fat. See Reply (dkt. 95). Vinh-Sanh subsequently filed a Further Case Management Statement noting that Sun Fat is apparently "no longer appearing in and defending the case." See Further CMC (dkt. 101) at 1.

## II.    LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the [moving] party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party. Id. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of material in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

Even when the nonmoving party fails to oppose the motion for summary judgment, the moving party still needs demonstrate that there is no genuine issue of material fact. See Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.23 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition[.]"). "The absence of an opposition does not . . . independently justify granting the motion" for summary judgment. United States v. Filice, No. CIV 06-02528 WBS DAD, 2007 WL 4591445, at *1 n.1 (E.D. Cal. Dec. 28, 2007) (citing Henry v. Gill Indus., Inc., 983 F.2d 943, 949–50 (9th Cir. 1993)). However, a court "may . . . grant an unopposed motion for summary judgment if the movant's papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact." United States v. Abdullah, No. CV 11-0784, 2011 U.S. Dist. LEXIS 141308, at *6 (N.D. Cal. Nov. 8, 2011) (citing Henry, 983 F.2d at 950).

### III.   DISCUSSION

The Court GRANTS Vinh-Sanh's motion for summary judgment because (A) Sun Fat fails to oppose the motion; and (B) Vinh-Sanh has shown that there is no genuine dispute of material facts related to its claims of trademark infringement and unfair competition. However, (C) the Court DENIES without prejudice Vinh-Sanh's request for a permanent injunction, as the Court does not consider arguments raised for the first time in a reply.

### A. Sun Fat's Failure to Oppose Motion for Summary Judgment

Sun Fat has failed to respond not only to Vinh-Sanh's motion for summary judgment, but also to this Court's Order to Show Cause. Although this failure is not a sufficient justification for granting Vinh-Sanh's motion for summary judgment, see Henry, 983 F.2d at 949–50, the Court grants the motion in part because of this failure to respond. As explained below, Vinh-Sanh has proven that there is no genuine issue as to any material fact, and therefore has met its burden.

### B. Merits of Vinh-Sanh's Claims

Vinh-Sanh has demonstrated that there is no genuine dispute regarding the merits of the four claims—federal trademark infringement, federal unfair competition, common law trademark infringement, and unfair competition under the California Business and Professions Code § 17200—raised in its complaint and for which it seeks summary judgment.

#### 1. Federal Trademark Infringement

Vinh-Sanh has demonstrated that there is no genuine dispute regarding the merits of a trademark infringement claim. To prevail on such a claim, a plaintiff must demonstrate (1) ownership of a valid trademark and (2) use by defendant in commerce of a mark likely to cause confusion. See Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011).

##### a. Ownership of Mark

Vinh-Sanh owns its trademarks. Vinh-Sanh registered the THREE LADIES Composite Mark on May 31, 2005, claiming a first use in commerce in May of 1986, and registered its Vietnamese-language Word Mark on October 8, 2013, with a first use in commerce of 2004. See Aug. 2. Chen Decl. Exs. C, D, E, F. Vinh-Sanh's registration and ownership of the marks constitute prima facie evidence of the marks' validity and Vinh-Sanh's exclusive right to use the marks in commerce. See 15 U.S.C. § 1115(b); Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 970 (9th Cir. 2007). Vinh-Sanh has used the marks continuously in commerce since 1986. See Aug. 2 Chen Decl. ¶ 10.

##### b. Likelihood of Confusion

Vinh-Sanh has also demonstrated that there is no genuine dispute as to the likelihood of

confusion. There is a likelihood of confusion between two products "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 825 (9th Cir. 1993) (quoting Metro Publishing, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993) (abrogated on other grounds)) (quotation marks omitted). The Ninth Circuit analyzes likelihood of confusion by referring to eight factors identified in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979) (abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (2003)): (a) strength of the mark; (b) similarity of the marks; (c) proximity of the goods/services sold; (d) similarity in the marketing channels used; (e) type of goods/services and degree of care likely to be exercised by purchasers; (f) evidence of actual confusion; (g) defendant's intent in selecting its mark; and (h) likelihood of expansion into other markets.

### i. Strength of the Mark

Strong marks are inherently distinctive and are "afforded the widest ambit of protection," whereas a "descriptive mark tells something about the product [and] will be protected only when secondary meaning is shown." Sleekcraft, 599 F.2d at 349. That Vinh-Sanh registered the trademarks without being required to prove secondary meaning supports the conclusion that the marks are inherently distinctive. See Americana Trading, Inc. v. Russ Berrie & Co., 966 F.2d 1284, 1287 (9th Cir. 1992) (holding that registered marks are presumed to be distinctive). Moreover, the THREE LADIES mark is distinctive on its face. See Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1198 (9th Cir. 2009) ("[T]he 'primary criterion' for distinguishing between a suggestive and a descriptive mark 'is the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product.'") (internal citation omitted)). "THREE LADIES" does not describe the rice or its features—it is instead fanciful and arbitrary, like the name "Dutch Boy" for paint. See Sleekcraft, 599 F.2d at 349 (citing National Lead Co. v. Wolfe, 223 F.2d 195, 199 (9th Cir. 1955), cert. denied, 350 U.S. 883 (1955)).

Trademarks consisting of non-English words must pass the "foreign equivalents" test: the

mark is translated into English to see whether, "to those American buyers familiar with the foreign language, the word would have a descriptive connotation." See McCarthy on Trademarks, § 11:34 (5th ed.); see also Bart Schwartz Int'l Textiles, Ltd. v. F.T.C., 129 U.S.P.Q. 258, 289 F.2d 665, 668 (1961) ("[A] descriptive word in a foreign language cannot be registered in the United States as a trademark for the described product."). Because Vinh-Sanh's Vietnamese mark translates to "Three Ladies" or "Three Girls," it is just as arbitrary and fanciful as the English mark and is thus just as distinctive a mark.

Strong marks also show "commercial strength," a feature "based on 'actual marketplace recognition[.]'" Network Automation, Inc., 638 F.3d at 1149 (quoting Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1058 (9th Cir. 1999)). Vinh-Sanh asserts that the THREE LADIES brand is easily recognizable to customers. Aug. 2. Chen Decl. ¶ 7.

However, Sun Fat CEO Benny Hong declared in an earlier filing that there are "other popular rice brands" that include drawings of three Asian people, such as Three Farmers and Three Kings. Hong Decl. (dkt. 23-1) ¶ 20; see also Xiong Decl. (dkt. 23-7) ¶ 10 ("[S]everal companies in the rice and Asian foods market . . . use drawings of three ancient Asian characters."). Sun Fat presented the Court with no examples. While examples of extensive third party use of an image much like the THREE LADIES mark would weaken Vinh-Sanh's claim, see Hero Nutritionals LLC v. Nutraceutical Corp., No. SACV 11-1195 AG (MLGx), 2013 WL 4480674, at *4 (C.D. Cal. Aug. 16, 2013) (holding that extensive third party use demonstrated weakness of marks), without these examples, the THREE LADIES mark appears strong.

### ii. Similarity of the Marks

"Similarity of the marks is tested on three levels: sight, sound, and meaning," and each must be considered as encountered in the marketplace. Sleekcraft, 599 F.2d at 351. Even assuming that the THREE ASIAN LADIES identifier from the Sun Fat website, Aug. 2 Chen Decl. Ex. H, is no longer on display, the image on the Sun Fat rice, id. Ex. G—a photograph of three women in traditional Asian clothing—is strongly reminiscent of the image on Vinh-Sanh's rice, id. Ex. B—a drawing of three women in traditional Asian clothing with the words "Three Ladies Brand" underneath. Both show three women smiling while wearing different traditional

7

Asian dresses, though the Vinh-Sanh image shows the women's full bodies and the Sun Fat image cuts off above the women's knees, the women are doing different things with their hands in the two images, and the Vinh-Sanh image is a drawing while the Sun Fat image is a photograph. Compare Aug. 2 Chen Decl. Ex. B with Aug. 2 Chen Decl. Ex. G.

        Sun Fat argued in opposing the TRO that the distinction between a drawing and a photograph is significant. See Hong Decl. ¶ 20. But the likelihood of confusion for a consumer in the marketplace is not necessarily that they mistake one image for another—it is that they will perceive Sun Fat's package, with a photograph of three women in traditional Asian dress, as an updated version of the drawing of three women in traditional Asian dress that they are accustomed to seeing on Vinh-Sanh's product. See Aug. 2 Chen Decl. ¶ 21. Sun Fat's citation to Funrise Canada (HK) Ltd. v. Zauder Bros., Inc., No. 99-cv-1519 (ARR), 1999 WL 1021810, at *22 (E.D.N.Y. July 2, 1999), in which the court noted the difference between a "photograph of a witch" and a "drawing of a fanciful phantom-like ghoul" is not helpful—this case is more like a photograph of a witch versus a drawing of a witch. See TRO Opp'n (dkt. 23) at 8.

        Sun Fat earlier argued that its three women are not wearing clothing representing Cambodia, Vietnam, and Laos (as in the Vinh-Sinh image), but either Cambodian, Hmong and Vietnamese clothing, or Thai, Vietnamese, and Hmong clothing. See Hong Decl. ¶ 14. It is true that the dresses are different. Of the three women pictured in the two designs, the first woman looks the most similar in both images, with an elaborate, pointed headpiece; the second woman in both images has a long-sleeved floral dress (though the second Vinh-Sanh woman is wearing a headpiece while the second Sun Fat woman is not); and the third woman is the most different—while the Vinh-Sanh woman wears a flower in her hair and a sleeveless dress, the Sun Fat woman wears a triangular headpiece and three-quarter sleeve dress, though both dresses exhibit prominent collars. Compare Aug. 2 Chen Decl. Ex. B with Aug. 2 Chen Decl. Ex. G.

        Sun Fat also argued in opposing the TRO that the THREE LADIES name appears below the image of the three women on the Vinh-Sanh rice, while Sun Fat does not use the name "three ladies" anywhere on its rice. See Hong Decl. ¶ 8. This is a difference between the two images— and of course other words on the rice bags are different as well (though both are bags of "Jasmine

1  Rice" and "Thai Hom Mali Rice").  See Aug. 2 Chen Decl.

2  Ultimately, while there are differences between the two images, the consumer in the
3  marketplace is faced with two bags of jasmine rice, both with images of three women in
4  traditional, formal, Asian dresses.  And where the parties offer competing goods, a lower level of
5  similarity between the marks themselves will support a finding of likelihood of confusion.  See
6  Sleekcraft, 599 F.2d at 350; Nautilus Grp., Inc. v. Icon Health & Fitness, Inc., 372 F.3d 1330,
7  1345 (Fed. Cir. 2004).  This factor favors Vinh-Sanh.

### iii. Proximity of the Goods/Services Sold

"For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." Sleekcraft, 599 F.2d at 350.  It is undisputed that the parties are using the marks on the exact same product: jasmine, or Thai Hom Mali, rice.

### iv. Similarity in the Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion."  Sleekcraft, 599 F.2d at 353.  Sun Fat's rice "appears in the same section in many of the same stores in which . . . THREE LADIES rice is featured."  Aug. 2 Chen Decl. ¶ 24.  Accordingly, the two products seem to employ similar marketing channels.  Vinh-Sanh sells its rice throughout the country, see Aug. 2 Chen Decl. ¶ 8, but it is not clear how widely Sun Fat sells its allegedly infringing product and thus whether its marketing channels go beyond the Central Valley.  (Even so, that Vinh-Sanh stopped "virtually all of its sales to the Central Valley," Hong Decl. ¶ 17, is not the same as its not competing at all in the Central Valley).  This factor is not significant to the Court's analysis.

### v. Types of Goods/Services and the Degree of Care Likely to be Exercised by Purchasers

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution."  Sleekcraft, 599 F.2d at 353.  "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely."  Id.  "Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely."  Id.

9

Vinh-Sanh submits evidence that it has goodwill in its products and "[o]ur customers have come to recognize THREE LADIES rice as the best quality." Aug. 2 Chen Decl. ¶ 8; see also Tony Ly Decl. ¶ 4 ("Our customers are highly familiar with the THREE LADIES Brand and the logo of the three ladies—it is the most popular rice we have and has been purchased by our customers for many years."); but see Tony Ly Decl. ¶ 6 ("I believe many customers only look at the picture of the three ladies and will not notice the brand name so they will buy Sun Fat rice when they wanted to buy VINH-SANH TRADING CORPORATION's THREE LADIES Brand rice."). This evidence suggests that Vinh-Sanh's customers are, if not buyers with "expertise in the field," perhaps discerning. Sun Fat emphasized this point as well at an earlier stage of the case: "customers . . . are extremely loyal to the brand of rice that they and their families like." See Hong Decl ¶ 13.

Thus, although the goods here are presumably inexpensive, there is evidence that customers use care in choosing their rice. This factor is mixed.

### vi.     Evidence of Actual Confusion

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely," but "[p]roving actual confusion is difficult[.]" Sleekcraft, 599 F.2d at 352. Sun Fat previously submitted declarations from market employees declaring: "Never have any customers been confused as to Lucky Coin [the Sun Fat brand name] and Three Ladies coming from the same company," Bee Xiong Decl. (dkt. 23-2) ¶ 6, and "None of our customers have ever been confused as to the identity of any kind of partnership or the like between Three Ladies, Lucky Coin or any other of Sun Fat's many products," Keng Xiong Decl. (dkt. 23-6) ¶ 11; Sam Xiong Decl. (dkt. 23-7) ¶ 11 ("None of our customers have ever been confused as to the identity or any kind of partnership of the like between Three Ladies, Lucky Coin or any other of Sun Fat's many products."). The evidence of actual consumer confusion is scant. See Tony Ly Decl. ¶ 6 ("Our store decided not to carry the Sun Fat Lucky Coin Brand rice with the picture of three Asian women in order to avoid confusion."); Aug. 2 Chen Decl. ¶ 24 ("Our retailers report that consumers are being or will very likely be highly confused as a result of Sun Fat's rice featuring the design mark of three ladies and appearing next to our THREE LADIES products.").

While not an instance of consumer confusion, in the reply to its MPI, Vinh-Sanh provided the declaration of Cindy Lau, the owner of Maxim Market #1, who declared that she experienced actual confusion between Three Ladies and Lucky Coin rice. See Lau Decl. (dkt. 45-2). In mid-2019, Lau received a shipment of Lucky Coin rice and believed that it was Three Ladies rice; she called the representative of her Three Ladies rice supplier, First World's Cam Mach, to inquire about new packaging. See id. ¶¶ 7–10. Lau's declaration lends some support to the notion that individual customers would also become confused, but her own confusion is not terribly significant. This factor is mixed.

### vii. Defendant's Intent in Selecting its Mark

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." Sleekcraft, 599 F.2d at 354. Sun Fat's CEO asserted previously that he discontinued the previous design on Sun Fat's Thai jasmine rice in 2015 "because I learned that the Thai model featured in the photo on the bag for that brand of rice had passed away." Hong Decl. ¶ 12.[1] "[T]o update the bag design" on its Lucky Coin rice, he declared, "I decided we would use a photo of a new Thai model, and, because we have many customers from the Hmong and Vietnamese communities, the new bag would feature photos of Hmong and Vietnamese models as well." Id. ¶ 14. While this is an innocent explanation, it is not altogether persuasive, given Vinh-Sanh's undisputed brand dominance and the fact that Sun Fat was aware of Vinh-Sanh's product having "for over a decade . . . engaged in a wholesale relationship . . . with Sun Fat for the sale of a small quantity of our THREE LADIES rice" and "distributed [Vinh-Sanh's] genuine THREE LADIES rice to markets in the U.S." See Aug. 2 Chen Decl. ¶ 18.

Vinh-Sanh notes that Sun Fat continues to sell products in packaging depicting the deceased Thai model. See Oct. 23 Viau Decl. (dkt. 43) ¶ 6, Ex. E. Sun Fat argued when opposing the MPI that CEO Benny Hong was uncomfortable releasing a "high-volume product featuring a model he understood to be deceased." Benny Hong Depo., Ex. 4 (Dkt. 44-4).

---

[1] The previous design is included in the Complaint ¶ 27.

11

Overall, Sun Fat's knowledge of Vinh-Sanh's Three Ladies mark is a factor that favors Vinh-Sanh.

### viii. Likelihood of Expansion into Other Markets

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 599 F.2d at 354. "When goods are closely related, any expansion is likely to result in direct competition." Id. There is no real argument about this by the parties, though there is evidence that Sun Fat's design is part of a rebranding, and that "Sun Fat has been working hard to promote this rice product" and making "significant investment in promotions and advertising." Hong Decl. ¶ 15. Prior to the TRO hearing, moreover, Sun Fat also had "a substantial inventory of [its allegedly infringing] product (about 1,500 bags) that [it] hope[d] to sell." Id. ¶ 16. It is unclear to what extent Sun Fat has depleted its stock since then, however. There therefore appears to be some possibility of Sun Fat's expansion into other markets, though it is speculative.

### ix. Overall Showing on Likelihood of Confusion

In light of all of the Sleekcraft factors—particularly the strength of the Vinh-Sanh mark, the similarity of the parties' marks, the proximity of the goods, and Sun Fat's intent—the mark is likely to cause confusion.

### c. Overall Showing on Federal Trademark Infringement

Because Vinh-Sanh has shown both (1) that it owns a valid mark and (2) that Sun Fat's use of its mark causes confusion, there is no genuine dispute as to both of these factors. Therefore, Vinh-Sanh has established its federal trademark infringement claim.

### 2. Federal Unfair Competition

The federal unfair competition statute, as part of the Lanham Act, provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or

12

>as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,
>
>. . .
>
>shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  Vinh-Sanh has provided evidence that Sun Fat used a mark that was likely to cause confusion, as described in the discussion of the Sleekcraft factors above, in violation of the federal unfair competition laws.

The Supreme Court has interpreted the federal unfair competition statute to allow suits only by "plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"  Lexmark Int'l, Inc v. Static Control Components, Inc., 572 U.S. 118, 129 (2014) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).  Because this statute includes a statement of its purposes as to "regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce" and to "protect persons engaged in such commerce against unfair competition," 15 U.S.C. § 1127, "a plaintiff must allege an injury to a commercial interest in reputation or sales" to be within the zone of interests, Lexmark Int'l, Inc., 572 U.S. at 131–32.  Vinh-Sanh has alleged an injury to both its reputation and sales, see Compl.; TRO App.; MPI, and therefore satisfies the zone of interests prong.

Further, the Supreme Court limits the cause of action to "plaintiffs whose injuries are proximately caused by violations of the statute."  Lexmark Int'l, Inc., 572 U.S. at 132.  "[S]ince the Lanham Act authorizes suit only for commercial injuries, the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute."  Id. at 133.  Thus, a "plaintiff suing under §1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."  Id.  Vinh-Sanh has suffered economic injury through consumers purchasing Sun Fat's rice instead, and reputational injury through the loss of goodwill.  Aug. 2 Chen Decl. ¶¶ 24–26.  These injuries are directly due to customer confusion from Sun Fat's advertising.  Therefore, Vinh-Sanh has satisfied the proximate cause prong, and can invoke this cause of action.

13

Vinh-Sanh has demonstrated that Sun Fat is using a word and symbol that are likely to cause confusion. Therefore, Vinh-Sanh has met its burden of proving there is no genuine dispute as to the federal unfair competition claim.

### 3. Common Law Trademark Infringement

"The tests for infringement of a federally registered mark under § 32(1) [of the Lanham Act], 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a) [of the Lanham Act], 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same: whether confusion is likely." Silberstein v. Fox Entm't Grp., Inc.,732 F. App'x 517, 519 (9th Cir. 2018) (quoting Grey v. Campbell Soup Co., 650 F. Supp. 1166, 1173 (C.D. Cal. 1986)). As described above, Vinh-Sanh has demonstrated that it owns the trademark and that confusion is likely. Therefore, Vinh-Sanh has established that there is no genuine dispute as to its common law trademark infringement claim.

### 4. California Unfair Competition

Under the California Business and Professions Code § 17200, unfair competition is "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Profs. Code § 17200. To be considered unlawful, a business practice must be "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Shroyer v. New Cingular Wireless Servs., 606 F.3d 658, 666 (9th Cir. 2010) (internal quotation marks omitted). Because Vinh-Sanh has established that there is no genuine dispute that Sun Fat's conduct violates federal trademark infringement law, federal unfair competition law, and common law trademark infringement law, Sun Fat's conduct is also unfair competition under the California statute.

### 5. Conclusion as to Vinh-Sanh's Success on the Merits

When the nonmoving party does not oppose a motion for summary judgment, summary judgment should only be granted when the moving party has proven the merits. See United States v. Filice, No. CIV 06-02528 WBS DAD, 2007 WL 4591445, at *1 n.1 (E.D. Cal. Dec. 28, 2007) (citing Henry v. Gill Indus., Inc., 983 F.2d 943, 949–50 (9th Cir. 1993)). Vinh-Sanh has demonstrated that there is no genuine dispute as to all four of its claims and the Court therefore GRANTS summary judgment on all of them.

## C. Permanent Injunction

In its reply brief, Vinh-Sanh requested the remedy of a permanent injunction. See Reply to MSJ at 2–3. Although Vinh-Sanh had listed the remedy of an injunction in its complaint, see Compl. ¶¶ 39, 45, 52, 57, Vinh-Sanh did not discuss an injunction at all in its motion for summary judgment—either to argue that it had met its burden or to outline what an injunction should look like. The Court does not consider arguments or issues raised for the first time in a reply. See, e.g., Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 1996) ("[I]ssues raised for the first time in the reply brief are waived."); Citizens for Free Speech, LLC v. Cnty. of Alameda, 62 F. Supp. 3d 1129, 1132 n.1 (N.D. Cal. 2014) ("The Court does not consider arguments raised for the first time in a reply brief."). Therefore, the Court DENIES the permanent injunction without prejudice. Vinh-Sanh may separately move for the relief that it contends should flow from the Court's grant of summary judgment, which may include a permanent injunction.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment is GRANTED, and Vinh-Sanh's request for a permanent injunction is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: July  19 , 2021

CHARLES R. BREYER
United States District Judge